1
2
3
4
5
6
7
8
9       **IN THE UNITED STATES DISTRICT COURT**

10      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11
12
| JAMES ANTHONY FAGONE, | CASE NO. CV F 12-2014 LJO SKO |
|---|---|
| Plaintiff, | **ORDER ON FRESNO COUNTY DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 16.) |
| JUDGE WAYNE R. ELLISON, et al., | |
| Defendants. | |
| _____/ | |

19                          **INTRODUCTION**

20          Defendants[1] seek to dismiss pro se plaintiff James Anthony Fagone ("Mr. Fagone's") action

21      which appears to arise out of the criminal prosecution and conviction of James Fagone ("James"), who

22      appears to be Mr. Fagone's son or other relative.  This Court construes Mr. Fagone's action as an attempt

23      to thwart and vex public officials.  For the reasons discussed below, this Court DISMISSES this action

24      based on the absence of Mr. Fagone's credible claims and VACATES the February 28, 2013 hearing set

25      by the County defendants.

26      _____

27          [1]          Defendants seeking F.R.Civ.P. 12(b)(6) dismissal are Fresno County Superior Court Judge Dennis Peterson
        ("Judge Peterson"), Fresno County District Attorney Elizabeth Egan ("DA Egan"), and Fresno criminal defense attorney Peter
28      Jones ("Mr. Jones") and will be referred to collectively as the "County defendants."

                                      1

1

## BACKGROUND

2      Mr. Fagone proceeds on this operative First Amended Complaint ("FAC") to name as defendants

3  several Fresno County officials and the State of California.  In December 2006, James was convicted

4  of the murder of Timothy Schuster.  The prosecutor was now Judge Peterson.  Mr. Jones was James'

5  defense counsel.  Ms. Egan was and remains the Fresno County District Attorney.  The FAC appears to

6  take issue with James' criminal prosecution, trial, conviction and sentence and to proceed under 42

7  U.S.C. § 1983 ("section 1983") to allege constitutional violations.

8

## DISCUSSION

9

### Sua Sponte Dismissal

10     The FAC fails to allege cognizable claims.

11     "A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal

12  may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service,*

13  *Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981).  Sua

14  sponte dismissal may be made before process is served on defendants.  *Neitzke v. Williams*, 490 U.S.

15  319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*,

16  745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte

17  prior to service of process on defendants).

18     "When a federal court reviews the sufficiency of a complaint, before the reception of any

19  evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

20  a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

21  claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development*

22  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

23  a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

24  theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*

25  *Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

26     In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

27  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

28  can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80

F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

3

1    The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

2          First, the tenet that a court must accept as true all of the allegations contained in
3    a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
     a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
4    only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
     . Determining whether a complaint states a plausible claim for relief will . . . be a
5    context-specific task that requires the reviewing court to draw on its judicial experience
     and common sense. . . . But where the well-pleaded facts do not permit the court to infer
6    more than the mere possibility of misconduct, the complaint has alleged – but it has not
     "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

7          In keeping with these principles a court considering a motion to dismiss can
8    choose to begin by identifying pleadings that, because they are no more than conclusions,
     are not entitled to the assumption of truth. While legal conclusions can provide the
9    framework of a complaint, they must be supported by factual allegations. When there are
     well-pleaded factual allegations, a court should assume their veracity and then determine
     whether they plausibly give rise to an entitlement to relief.

11   *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

12         As discussed below, the FAC is subject to dismissal in the absence of claims supported by a

13   cognizable legal theory or sufficient facts alleged under a cognizable legal theory.

14                              **Failure To Satisfy F.R.Civ.P. 8**

15         The FAC is subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a plaintiff

16   to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or

17   occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles*

18   *County*, 216 F.3d 837, 840 (9th Cir. 2000).

19         F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct."  This requirement

20   "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)."

21   *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).  "Something labeled a complaint but written

22   more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to

23   whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."

24   *McHenry*, 84 F.3d at 1180.  "Prolix, confusing complaints . . . impose unfair burdens on litigants and

25   judges."  *McHenry*, 84 F.3d at 1179.

26         Moreover, a pleading may not simply allege a wrong has been committed and demand relief.

27   The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the

28   "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475,

                                              4

1481 (9th Cir. 1997).  Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly.  *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim.  *Jones*, 733 F.2d at 649.  A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (quoting  *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).  The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

The FAC fails to satisfy F.R.Civ.P. 8.  The FAC lacks facts of any defendant's specific wrongdoing to provide fair notice as to what each defendant is to defend.  The FAC lacks cognizable claims or legal theories upon which to support any defendant's liability, especially considering the FAC's vagueness and lack of a stated connection between Mr. Fagone and James.  The FAC lacks specific, clearly defined allegations of any defendant's alleged wrongs to give fair notice of claims plainly and succinctly to warrant dismissal of this action.  The FAC is merely riddled with repeated references to "fraud upon the court," "denying due process," "unlawful arrest," "unlawful detention," "criminal trespass," "criminal conspiracy," "criminal treason," "unlawful conviction," "unlawful imprisonment," "concealment of facts," "coerced statements," and "destroyed exculpatory evidence."  In the end, the apparent gist of the FAC is that James "is currently being held unlawfully and without cause in a California State Prison."  Morever, the FAC is subject to defenses and based on legally deficient theories to further warrant dismissal.

### Standing

Mr. Fagone lacks standing to pursue James' alleged constitutional violations.

### *Section 1983 Requirements*

"Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person

5

acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

Generally, only the person whose "rights were violated can sue to vindicate those rights." *See Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998); *see also Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966 (1969) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted"). Moreover, due process rights are "guaranteed to the individual" and "are personal rights." *See Shelley v. Kraemer*, 334 U.S. 1, 22, 68 S.Ct. 836 (1948).

The FAC lacks facts of an alleged constitutional violation suffered by Mr. Fagone. The FAC's vague allegations are limited to violations allegedly suffered by James. Mr. Fagone lacks standing to assert the FAC's purported claims to warrant dismissal.

**Limitations Defense**

Since the wrongs alleged in the FAC occurred during 2003-2007, FAC claims are time barred.

Federal civil rights statutes have no independent limitations period. *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993) (California's statute of limitations for personal injury actions governs claims brought

1   pursuant to 42 U.S.C. §§ 1981, 1983, and 1985); *McDougal v. County of Imperial*, 942 F.2d 668, 673-
2   674 (9th Cir. 1991) ("suits under § 1985(3) are also best characterized as personal injury actions and are
3   governed by the same statute of limitations as actions under § 1983"); *Abreu v. Ramirez*, 284 F.Supp.2d
4   1250, 1257 (C.D. Cal. 2003).  The applicable limitations period is determined by borrowing the forum
5   state's limitations period for personal injuries. *Johnson*, 207 F.3d at 653; *Abreu*, 284 F.Supp.2d at 1257.
6   Section 1983 and related federal civil rights claims "are best characterized as personal injury actions."
7   *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938 (1985).

8        On January 1, 2003, California Code of Civil Procedure section 335.1 ("section 335.1")[2] took
9   effect to extend the prior limitations period for personal injury actions (and correspondingly to federal
10  civil rights claims, *see Wilson*, 471 U.S. at 271-272, 105 S.Ct. 1938; *Johnson v. Railway Express
11  Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716 (1975); *Krug v. Imbrodino*, 896 F.2d 395, 396-397 (9th Cir.
12  1990)), from one year under former California Code of Civil Procedure section 340(3) to two years.
13  *Abreu*, 284 F.Supp.2d at 1255; *see* Cal. Senate Bill 688 (Burton), Stats. 2002, ch. 448, §3. Applying
14  California law, federal civil rights claims which arise in California are generally barred if not brought
15  within two years if they accrued after January 1, 2003.  *See Johnson*, 421 U.S. 454, 95 S.Ct. 1716; *Elliot
16  v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *Krug*, 896 F.2d at 396-397; *see also Taylor*, 993
17  F.2d at 711.

18       Federal law "determines when a federal cause of action accrues, despite the fact that state law
19  determines the relevant statute of limitations." *Wetzel v. Lou Ehlers Cadillac Group*, 189 F.3d 1160,
20  1163 (9th Cir. 1999); *Elliott*, 25 F.3d at 801-802.  Under federal law, a claim accrues when the plaintiff
21  knows or has reason to know of the injury which is the basis of the action. *Tworivers v. Lewis*, 174 F.3d
22  987, 991 (9th Cir. 1999); *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996).  "Generally, the statute of
23  limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury."
24  *De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991).

25       Mr. Fagone filed his original complaint on December 12, 2012, more than several years after
26  section 1983 claims accrued.  Section 1983 claims are time barred, especially given that the FAC reveals

27  _____

28      [2]   Section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of,
    an individual caused by the wrongful act or neglect of another."

1    knowledge of alleged injury at the time it occurred.  The limitations defense further warrants dismissal

2    of this action.

3                                        **Absence Of Individual Claim**

4          The FAC fails to allege an individual section 1983 claim for Mr. Fagone.

5          "The Fourteenth Amendment protects individuals against the deprivation of liberty or property

6    by the government without due process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir.

7    1993).  "The concept of 'substantive due process,' semantically awkward as it may be, forbids the

8    government from depriving a person of life, liberty, or property in such a way that 'shocks the

9    conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los*

10   *Angeles*, 147 F.3d 867, 871 (9th Cir. 1998); *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir.

11   1998) ("To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a

12   government deprivation of life, liberty, or property").  The substantive component of the Due Process

13   Clause is violated by government action only when it "can properly be characterized as arbitrary, or

14   conscience shocking, in a constitutional sense." *Collins v. City of Harker Heights*, 503 U.S. 115, 128,

15   112 S.Ct. 1061, 1070 (1992).

16         "The protections of substantive due process have for the most part been accorded to matters

17   relating to marriage, family, procreation, and the right to bodily integrity." *Albright*, 510 U.S. at 272,

18   114 S.Ct. at 812.[3]   The Fourteenth Amendment's due process clause "provides heightened protection

19

20          [3]        In *Armendariz v. Penman*, 75 F.3d 1311, 1318-1319 (9th Cir. 1996), the Ninth Circuit noted:

21                 However, the use of substantive due process to extend constitutional protection to economic and
     property rights has been largely discredited. *See generally* Gerald Gunther, Constitutional Law at 432-65

22   (12th ed. 1991). Rather, recent jurisprudence restricts the reach of the protections of substantive due
     process primarily to liberties "deeply rooted in this Nation's history and tradition." *Moore*, 431 U.S. at 503,

23   97 S.Ct. at 1937. Thus, the Fourteenth Amendment protects against a State's interferences with "personal
     decisions relating to marriage, procreation, contraception, family relationships, child rearing, and

24   education," as well as with an individual's bodily integrity. *Planned Parenthood v. Casey*, 505 U.S. 833,
     851, 112 S.Ct. 2791, 2807, 120 L.Ed.2d 674 (1992) (discussing cases); *see Loving v. Virginia*, 388 U.S.

25   1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967) (marriage); *Griswold v. Connecticut*, 381 U.S. 479,
     485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965) (contraception); *Rochin v. California*, 342 U.S. 165, 172,

26   72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (bodily integrity); *Pierce v. Society of Sisters*, 268 U.S. 510, 534,
     45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925) (child rearing). These areas represent "a realm of personal liberty

27   which the government may not enter." *See Casey*, 505 U.S. at 847, 112 S.Ct. at 2805. The cataloguing of
     these Fourteenth Amendment protections demonstrates that our Constitution embraces a notion of liberty

28   encompassing more than the express provisions of the Bill of Rights.

1   against government interference with certain fundamental rights and liberty interests." *Washington v.*

2   *Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258 (1997).  Courts must resist the temptation to augment

3   the substantive reach of the Fourteenth Amendment, "particularly if it requires redefining the category

4   of rights deemed to be fundamental." *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 2341

5   (1989).

6        The Ninth Circuit recognizes that a parent has a Fourteenth Amendment liberty interest in the

7   companionship and society of his or her child. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

8   A deprivation of that interest may arise to a violation of the substantive component of the Due Process

9   Clause. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998). To prevail

10  on such a claim, a plaintiff must show that the defendant's conduct in causing the deprivation "shocks

11  the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). "What state of mind shocks

12  the conscience depends on the circumstances of a particular case." *Provencio v. Vazquez*, 258 F.R.D.

13  626, 640 (E.D. Cal. 2009) (citation omitted). Mere negligence, however, is never enough. *Woodrum*

14  *v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (citing *Daniels v. Williams*, 475 U.S. 327,

15  330-32 (1986)).

16       The FAC fails to establish Mr. Fagone's substantive due process claim based on James'

17  prosecution, conviction and sentence in the absence of authority that a relative has a liberty or property

18  interest in his/her relative's avoidance of criminal prosecution and resulting punishment.  In the absence

19  of a cognizable claim for Mr. Fagone, the FAC is subject to dismissal.

20                          **Eleventh Amendment Immunity**

21       Claims against DA Egan are barred by Eleventh Amendment Immunity.

22        A "federal suit against state officials on the basis of state law contravenes the Eleventh

23  Amendment when – as here – the relief sought and ordered has an impact directly on the State itself."

24  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 117, 104 S.Ct. 900 (1984).  The Eleventh

25  Amendment "bars claims in federal court against state officials based on state law violations."  *Air*

26  *Transport Ass'n of America v. Public Utilities Com'n of State of Cal.*, 833 F.2d 200, 204 (9th Cir. 1987).

27  _____

28

9

1   The U.S. Supreme Court further explained:

2       A federal court's grant of relief against state officials on the basis of state law, whether
        prospective or retroactive, does not vindicate the supreme authority of federal law. On
3       the contrary, it is difficult to think of a greater intrusion on state sovereignty than when
        a federal court instructs state officials on how to conform their conduct to state law. Such
4       a result conflicts directly with the principles of federalism that underlie the Eleventh
        Amendment.

5

6   *Halderman*, 465 U.S. at 106, 104 S.Ct. 90.

7       A district attorney is a state official when acting in his/her prosecutorial capacity. *See Weiner*

8   *v. San Diego County*, 210 F.3d 1025, 1029 (9th Cir. 2000); *see also Pitts v. County of Kern*, 17 Cal.4th

9   340, 362, 949 P.2d 920 (1998) ("in California a district attorney represents the state when preparing to

10  prosecute and when prosecuting criminal violations of state law").

11      Eleventh Amendment immunity further warrants dismissal of this action against DA Egan.

12                           **Absolute Prosecutorial Immunity**

13      DA Egan and Judge Peterson are entitled to absolute prosecutorial immunity to further bar the

14  FAC's claims.

15      State prosecutors are entitled to absolute prosecutorial immunity for acts taken in their official

16  capacity. *See Imbler v. Pachtman*, 424 U.S. 409, 427, 430-431, 96 S.Ct. 984 (1976); *Gabbert v. Conn*,

17  131 F.3d 793, 800 (9th Cir. 1997); *Gobel v. Maricopa County*, 867 F.2d 1201, 1203 (9th Cir. 1989).

18      "In determining whether absolute immunity is available for particular actions, the courts engage

19  in a 'functional' analysis of each alleged activity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3rd Cir.

20  1992). In *Schlegel v. Bebout*, 841 F.2d 937, 943-944 (9th Cir. 1988), the Ninth Circuit provided guidance

21  to determine the scope of prosecutorial immunity:

22          Our inquiry must center on the nature of the official conduct challenged, and not
        the status or title of the officer. As a result, we must examine the particular prosecutorial
23      conduct of which [plaintiff] complains. If we determine that the conduct is within the
        scope of [defendants'] authority and is quasi-judicial in nature, our inquiry ceases since
24      the conduct would fall within the sphere of absolute immunity.

25          To determine whether conduct of a state official is within his or her authority, the
        proper test is not whether the act performed was manifestly or palpably beyond his or her
26      authority, but rather whether it is more or less connected with the general matters
        *committed* to his or her control or supervision. . . .

27
            Absolute immunity depends on the function the officials are performing when
28      taking the actions that provoked the lawsuit. We must look to the nature of the activity

                                        10

and determine whether it is "intimately associated with the judicial phase of the criminal process." . . . Investigative or administrative functions carried out pursuant to the preparation of a prosecutor's case are also accorded absolute immunity. (Emphasis in original; citations omitted.)

The classification of the challenged acts, not the motivation underlying them, determines whether absolute immunity applies. *Asheman v. Pope*, 793 F.2d 1072 (9th Cir. 1986)(en banc).

Prosecutors and other eligible government personnel are absolutely immune from section 1983 liability in connection with challenged activities related to the initiation and presentation of criminal prosecutions. *Imbler*, 424 U.S. 409; *see also Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 507 (1997); *Gabbert*, 131 F.3d at 800; *Roe v. City of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997); *Gobel*, 867 F.2d at 1203. "[A]bsolute prosecutorial immunity attaches to the actions of a prosecutor if those actions were performed as part of the prosecutor's preparation of his case, even if they can be characterized as 'investigative' or 'administrative.'" *Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984), *cert. denied*, 469 U.S. 1127, 105 S.Ct. 810 (1985). A prosecutor is absolutely immune when making a decision to initiate a prosecution "even where he acts without a good faith belief that any wrongdoing has occurred." *Kulwicki*, 969 F.2d at 1463-1464. "We think that conferring with potential witnesses for the purpose of determining whether to initiate proceedings is plainly a function 'intimately associated with the judicial phase of the criminal process,' *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995, and is therefore a quasi-judicial function 'to which the reasons for absolute immunity apply with full force.'" *Demery*, 735 F.2d at 1144. Immunity extends to "the preparation necessary to present a case," including "obtaining, reviewing, and evaluation of evidence." *Kulwicki*, 969 F.2d at 1465 (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1414 (3rd Cir. 1991)).

Absolute prosecutorial immunity applies even if it leaves "the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427, 96 S.Ct. at 993. Even charges of malicious prosecution, falsification of evidence, coercion of perjured testimony and concealment of exculpatory evidence will be dismissed on grounds of prosecutorial immunity. *See Stevens v. Rifkin*, 608 F.Supp. 710, 728 (N.D. Cal. 1984). Further activities intimately connected with the judicial phase of the criminal process include making statements that are alleged misrepresentations and mischaracterizations during hearings and discovery

11

1    and in court papers, *see Fry v. Melaragno*, 939 F.2d 832,837-838 (9th Cir. 1991), and conferring with

2    witnesses and allegedly inducing them to testify falsely, *see Demery*, 735 F.2d at 1144.

3        The FAC broadly references deprivation of constitutional rights and of life, liberty and property

4    without due process of law.  The events at issue fall within the scope of official conduct and authority

5    of DA Egan and Judge Peterson to cloak them with absolute prosecutorial immunity.  As such, the

6    FAC's claims against DA Egan and Judge Peterson are barred.

7                                **Absence Of Public Defender Liability**

8        The FAC lacks a viable claim against Mr. Jones as a public defender.

9        When public defenders act in their role as advocates, they do not act under color of state law for

10   section 1983 purposes.  *See Georgia v. McCollum*, 505 U.S. 42, 53 (1992); *Polk County v. Dodson*, 454

11   U.S. 312, 320-325 (1981); *Rivera v. Green*, 775 F.2d 1381, 1384 (9th Cir. 1985); *see also Cox v.

12   Hellerstein*, 685 F.2d 1098, 1099 (9th Cir. 1982).  The U.S. Supreme Court has concluded that public

13   defenders do not act under color of state law since their conduct as legal advocates is controlled by

14   professional standards independent of the administrative direction of a supervisor. *See Polk County*, 454

15   U.S. at 321-322; *see also Blum v. Yaretsky*, 457 U.S. 991, 1008-1009 (1982)(applying similar rationale

16   to determine that nursing home administrators were not state actors); *Mathis v. Pacific Gas & Elec. Co.*,

17   891 F.2d 1429, 1432 (9th Cir. 1989) (applying similar rationale to determine that employees conducting

18   psychiatric evaluation were not state actors).

19       The FAC at best raises issues with Mr. Jones' professional standards to avoid section 1983

20   liability.  The FAC is subject to dismissal as to Mr. Jones.

21                                **Attempt At Amendment And Malice**

22       Since the FAC's claims are insufficiently pled and barred as a matter of law, Mr. Fagone is

23   unable to cure claims by allegation of other facts and thus is not granted an attempt to amend.  Mr.

24   Fagone's papers raise frivolous points which this Court need not address individually.  *See Crain v.

25   Commissioner*, 737 F.2d 1417, 1417 (5th Cir. 1984) ("We perceive no need to refute these arguments

26   with somber reasoning and copious citation of precedent; to do so might suggest that these arguments

27   have some colorable merit.")

28       Moreover, this Court surmises that Mr. Fagone brought this action in absence of good faith and

seeks to exploit the court system solely for thwart or to vex the County defendants and others.  The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant."  *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984).  An attempt to thwart or vex the County and other defendants provides further grounds to dismiss this action.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.    DISMISSES with prejudice this action against the County defendants;

2.    DIRECTS the clerk to enter judgment in favor of defendants Elizabeth Egan, Dennis Peterson and Peter Jones and against plaintiff James Anthony Fagone in that there is no just reason to delay to enter such judgment given that Mr. Fagone's claims against the County defendants and their alleged liability are clear and distinct from claims against and liability of other defendants.  *See* F.R.Civ.P. 54(b);

3.    ORDERS Mr. Fagone, no later than February 4, 2013, to file papers to show cause why this Court should not dismiss this action against any remaining defendants, including Wayne Ellison, Tamara Beard and the State of California; and

4.    VACATES the February 4, 2013 deadline for any remaining defendants, including Wayne Ellison, Tamara Beard and the State of California, to respond to the FAC.  Any remaining defendants, including Wayne Ellison, Tamara Beard and the State of California, need not respond to the FAC, until this Court orders otherwise.

**This Court ADMONISHES Mr. Fagone that this Court will dismiss this action against any remaining defendants, including Wayne Ellison, Tamara Beard and the State of California, if Mr. Fagone fails to comply with this order and fails to file timely papers to show cause why this Court should not dismiss this action against any remaining defendants, including Wayne Ellison,**

1    **Tamara Beard and the State of California.**

2        IT IS SO ORDERED.

3    **Dated:    January 25, 2013              /s/  Lawrence J. O'Neill**

4                                          UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28